UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**F I L E D**

MAY 1 1 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-293-GWU

MARTHA GOODMAN,                                        PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                     DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 CFR 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Goodman

Step 4.  If no, the claimant is not disabled.  See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 CFR 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

Goodman

symptoms.  20 CFR Section 404.1529 (1991).  However, in evaluating a claimant's

allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.   If there is, we then examine:   (1)
> whether objective medical evidence confirms the severity of the alleged
> pain  arising  from  the  condition;  or  (2)  whether  the  objectively
> established  medical  condition  is  of  such  a  severity  that  it  can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

 Another  issue  concerns  the  effect  of  proof  that  an  impairment  may  be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have  regained  his  residual  capacity  for  work  if  he  had  followed  his  doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

 In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

Goodman

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.   Varley  v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Martha Goodman, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of depression and partial hearing loss. (Tr. 20).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform her past relevant work as a sewing machine operator and store clerk and, therefore, was not entitled to benefits.  (Tr. 21-5).  The Appeals Council declined to review (Tr. 6-9), and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 60 years, GED education, and past work experience as a school lunchroom monitor, sewing machine operator, and sales clerk could perform any jobs if she had no exertional impairments, but did have the following non-exertional

7

Goodman

restrictions.  (Tr. 398).  She: (1) would be precluded from work requiring acute hearing for safety; (2) would have a "limited but satisfactory" ability to relate to co-workers, deal with the public, interact with supervisors, carry out complex job instructions, relate predictably in social situations, demonstrate reliability, and deal with work stresses; and (3) would have a "more than satisfactory" ability to make other occupational, performance, and personal-social adjustments. (Id.).  The VE responded that, because of the work stress, the plaintiff's ability to perform her job as a lunchroom monitor would be affected, but she would be able to perform the jobs of sewing machine operator and clerk.  (Id.).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence. The issue of dates is important in the present case, in that the plaintiff had previously filed DIB and SSI applications which were denied at the initial level on February 5, 2000, and not further appealed. (Tr. 51, 69). The ALJ in the present case declined to reopen the prior application. (Tr. 15). The plaintiff's Date Last Insured (DLI) was December 31, 2002 (Tr. 69), meaning that she needed to establish disability between February 6, 2000 and December 31, 2002 in order to be entitled to DIB.  Her SSI application, filed on August 28, 2001 (Tr. 354-7),

8

Goodman

is not affected by the DLI, but the plaintiff cannot receive benefits prior to the date she filed.[1]

A review of the evidence submitted shows that, during the relevant periods, Mrs. Goodman sought treatment at the Adanta mental health counseling center, which she had attended on previous occasions, most recently in 1998. (E.g. Tr. 202). When she returned in May, 2002, she was given a diagnosis of recurrent major depression and assigned a Global Assessment of Functioning (GAF) score of 50, both currently and for the previous 12 months. (Tr. 186). A GAF of 50 represents serious impairment in social, occupational, or school functioning (e.g., "unable to keep a job.")[2] Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. This diagnosis was signed by the staff psychiatrist, Dr. Alan Myers, who shortly thereafter prescribed medications Wellbutrin and Celexa. (Tr. 185). Dr. Myers gave the same diagnoses and GAF score in June, 2002. (Tr. 175). Shortly thereafter, it was noted that she was showing some improvement medications and psychotherapy (Tr. 173), but at the end of July, problems with anger and irritability were said to be somewhat increased

---

[1]The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.  Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

[2]Since this indicates that the plaintiff would be unable to keep any job, it addresses the plaintiff's burden of proving an inability to perform past relevant work.

9

Goodman

lately, and the dosage of Celexa was increased and medication Risperdal was added. (Tr. 171).

A residual functional capacity assessment was completed by Brenda Ledbetter, the licensed clinical social worker who was counseling the plaintiff at Adanta, on July 29, 2002. It was also signed by Dr. Myers on August 6, 2002 with the notation that "I read above report today." This assessment indicated that the plaintiff had "extreme" limitations on her ability to work and coordination with or proximity to others, to complete a normal workday and work week without interruptions from psychologically- based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods, and to tolerate ordinary stresses associated with daily work activity. (Tr. 226-8). She also had "marked" restrictions in her ability to relate to other people, to perform daily activities, to remember work-like procedures, to understand and remember very short and simple instructions, to maintain attention for two-hour segments, and to accept instructions and respond appropriately to criticism from supervisors. (Id.).[3]  It was

_____

[3]The recitation of these factors makes it likely that the plaintiff would be precluded from most work, including past work. Social Security Ruling 85-15 provides that the "basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting [and a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." The plaintiff described one of the two past jobs as a store clerk cited by the ALJ as involving "helping people", presumably at odds with the "marked" limitations in that

10

Goodman

also noted that the impairments had lasted or could be expected to last at least a year. (Tr. 229). In response to a question about pain, it was noted that Mrs. Goodman reported being in constant pain from fibromyalgia, a hiatal hernia, and contact dermatitis, which severely limited her ability to maintain employment, and also had a severe hearing loss in both ears, which had not been helped by hearing aids. (Id.).

In his decision, the ALJ accepted the report as being the opinion of Dr. Myers, but rejected it because he felt that it was influenced by the psychyatrist's assessment of the plaintiff's hearing loss, which explained his restriction on her ability to understand very short and simple instructions. (Tr. 21, 227). The ALJ felt that the assessment did not "accurately portray limitations caused solely by the claimant's alleged mental impairments." (Tr. 21). In an earlier portion of his decision, the ALJ had noted the GAF score of 50, but added that by March, 2003 the plaintiff was reportedly doing well on her medication. (Tr. 19).

While some subsequent records from Adanta did reflect statements from the plaintiff that she was doing better (e.g. 295, 298, 323, 325), other records from 2003 show that she was still having problems (Tr. 317) and had "ineffective coping" and feelings of being "overwhelmed" (Tr. 319). No new GAF score was given, nor was the August, 2002 functional capacity assessment ever rescinded or modified.

_____

category.

11

Goodman

No state agency reviewer gave an opinion after the treating source records were submitted, and the ALJ rejected a consultative psychological assessment from November, 2001 by Dr. John Gatschenberger on the grounds that the psychologist was unlicensed at the time of the examination.  (Tr. 19).

The only other mental status evaluation in the record was a one-time examination by psychologist Julie Joseph Fox, M.A., in June, 2003, approximately six months after the DLI.  (Tr. 304-11). She diagnosed polysubstance abuse, based on the plaintiff's statements that she was taking some unprescribed medications from relatives to save money, along with a "possible mood disorder due to fibromyalgia with depressive symptoms" and "low average intellectual functioning." (Tr. 311).  She assigned a current GAF score of 60-63, reflecting moderate to mild symptomology. DSM-IV-TR, supra.  While Ms. Joseph Fox was given the report of Dr. Gatschenberger and the Adanta functional capacity assessment for review (Tr. 314), she did not mention these documents in her written report, and she was apparently not given any of the actual treatment notes from Adanta.  Therefore, no reason for rejecting the limitations found by the treating source was given.

Since Dr. Myers was a treating professional, his opinion is entitled to great weight.  The opinion of a one-time examiner, who had access to almost no relevant treatment records and who did not provide any rationale for disagreeing with the treating source, provides a very weak basis for rejecting the treating source opinion,

12

Goodman

particularly since the treating source gave an opinion squarely within the relevant period for DIB, and the one- time examiner saw the plaintiff months after the expiration of her insured status. In addition, the specific rationale given by the ALJ for rejecting the Adanta restrictions was only that they included limitations based on the plaintiff's alleged hearing impairment and did not "accurately portray the limitations caused solely by the claimant's alleged mental impairments." (Tr. 21). The Commissioner, in her brief, echoes this point and describes Dr. Myers as only a psychiatrist, asserting irrelevantly that the Commissioner is not bound by a psychologist's opinion when it is based on the combined effects of physical and mental factors. Commissioner's Motion for Summary Judgment, Docket Entry No. 15, p. 8. However, while a psychologist is not a medical doctor, a psychiatrist is, and there is no reason that Dr. Myers should not have considered the plaintiff's physical problems in an RFC assessment. Additionally, the uncontradicted GAF scores suggest substantially greater limitations than found by Ms. Joseph Fox. Therefore, if the opinion of the treating source is to be rejected, the ALJ should at least have obtained an opinion from a medical adviser who had access to the entire record.

The plaintiff also objects to the ALJ's physical findings, citing in particular a functional capacity assessment completed by Dr. Jeffrey Whitlow in August, 2003. (Tr. 335-7). The ALJ declined to accept this report, which limits the plaintiff to less than full-time work due to diagnoses of fibromyalgia and inflammatory arthritis,

13

because, in his view, Mrs. Goodman had seen the physician only on one occasion for the purpose of obtaining a disability assessment, because there was no diagnostic testing to support a diagnosis of inflammatory arthritis, and because the severe physical restrictions Dr. Whitlow imposed were incompatible with other medical evidence and with the plaintiff's own report of her activities (Tr. 19). The plaintiff argues that Dr. Whitlow was at least an examining source, whose opinion would be entitled to greater weight than the non-examining state agency sources upon whom the ALJ appeared to rely. The Court notes that Dr. Whitlow's examination was some eight months after the DLI, and was not specifically "related back" to the period at issue for DIB. An examination by Dr. Howard Podolsky, conducted on October 28, 2001, was squarely within the relevant period for DIB, and did not reveal their any objective findings (Tr. 147-151), and although Dr. Podolsky did not specifically discuss restrictions, the ALJ could reasonably have relied on this report, and the conclusions of state agency reviewers (Tr. 259-60, 277) in reaching a conclusion that most of the plaintiff's physical problems were less than severe prior to the DLI. However, these opinions did not necessarily address the plaintiff's condition two years later, at the time of Dr. Whitlow's examination, when the plaintiff was still eligible for SSI. In any case, since the case is being remanded on other grounds, and the plaintiff has already submitted additional evidence to the Appeals Council regarding her physical condition, the issue of physical functional restrictions

14

Goodman

can be reconsidered on remand in light of whatever new evidence the plaintiff is able to submit.

The decision will be remanded for further consideration as outlined in his opinion.

This the _____//_____ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

15